UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JASON MICHAEL WENTZEL,

        Plaintiff,                     Case No. 1:13-cv-81

v.                                            Honorable Janet T. Neff

ALLEGAN COUNTY JAIL et al.,

        Defendants.
_____/

## OPINION

        This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*, and Plaintiff will pay the filing fee as funds become available. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, Plaintiff's action will be dismissed for failure to state a claim.

**Factual Allegations**

Plaintiff Justin Michael Wentzel is incarcerated at the Allegan County Jail (ACJ). In his amended complaint (docket #8), he names the ACJ as the only defendant.

Plaintiff alleges that ACJ has a special dorm, Dorm 3, that is used to house individuals, like Plaintiff, who have been charged with "SOR" crimes. (Am. Compl., docket #8, Page ID#38.) When Plaintiff first arrived at ACJ, he was placed with the general prison population in Dorm 1. Plaintiff asked a prison guard why he was not placed in Dorm 3, but Plaintiff was told that he would be "fine." (*Id.*) After Plaintiff went to sleep in his dorm, another prisoner harassed him because of his charges and then punched him in the face. Plaintiff sustained a black eye and a bloody nose. The guards then opened the door to Plaintiff's unit and escorted him down the hall to the booking area while laughing at Plaintiff and making jokes about him. At the booking area, a nurse treated Plaintiff for his injury, but the guard who initially placed Plaintiff in Dorm 1 continued to laugh at him. Plaintiff lost his temper and threw an ice pack at the bulletproof glass in the booking area. At that point, a guard grabbed Plaintiff and forced him into a holding cell and onto a cement bench. A second guard then knelt on Plaintiff and hand-cuffed him. Plaintiff asserts that the first guard did not have a right to "shove" him. (*Id.* at Page ID#39.) Plaintiff also claims that the booking crew was negligent in failing to protect him because it did not fully examine his criminal record before placing him in Dorm 1.

Plaintiff further alleges that he has several medical conditions that did not receive adequate attention at ACJ. First, he has nodules on his lungs that need to be monitored by x-ray to determine whether or not they are growing or have become cancerous. Plaintiff regularly

complained to jail officials about his need for a biopsy, until finally they let him out of the facility to get one.

Second, Plaintiff has Sarcoidosis, an immune disorder. When he is exposed to chemical fumes, dust, mold, or mildew, his immune system overreacts and attacks his own body. He contends that the restroom at ACJ is "infested" with black mold and mildew, and that his mattress, which was kept on the floor due to overcrowding at the facility, also had mold on it. (*Id.* at Page ID#39.) When Plaintiff raised these issues to a doctor, the doctor told him that it was a "bad idea" to keep Plaintiff at the facility, because of his condition. (*Id.*) When Plaintiff raised the same issues to a nurse, she told Plaintiff that ACJ was an old facility, but that there were no cleaner places to put him.

On one occasion, Plaintiff stood up in his cell to go to the door and he blacked out. After he regained consciousness, a guard noticed a "nice size[d]" lump on his forehead. (*Id.* at Page ID#40.) The guard told him that he would notify medical personnel, but Plaintiff was not seen by anyone for five hours, at which time medical staff checked Plaintiff's "vitals" and then sent him back to his cell. (*Id.*)

As a result of the foregoing, Plaintiff claims that he has experienced "pain and suffering." (*Id.* at Page ID#41.) As relief, he seeks damages.

## Discussion

A complaint may be dismissed for failure to state a claim if "'it fails to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include

more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

As an initial matter, the Allegan County Jail is not a "person" capable of being sued under § 1983. However, construing Plaintiff's *pro se* complaint with all required liberality, *see Haines*, 404 U.S. at 520, the Court assumes that Plaintiff intended to sue Allegan County. Allegan County may not be held vicariously liable for the actions of its employees under § 1983. *See Connick v. Thompson*, 131 S. Ct. 1350, 1359 (2011); *City of Canton v. Harris*, 489 U.S. 378, 392 (1989); *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). Instead, a county is liable only when its official policy or custom causes the injury. *Id.* In a municipal-liability claim, the finding of a policy or custom is the initial determination to be made. *Doe v. Claiborne Cnty.*, 103 F.3d 495, 509 (6th Cir. 1996). The policy or custom must be the moving force behind the constitutional injury, and a plaintiff must identify the policy, connect the policy to the governmental entity and show that the particular injury was incurred because of the execution of that policy. *Turner v. City of Taylor*, 412 F.3d 629, 639 (6th Cir. 2005); *Alkire v. Irving,* 330 F.3d 802, 815 (6th Cir. 2003); *Doe*, 103 F.3d at 508-509. A "policy" includes a "policy statement, ordinance, regulation, or decision officially adopted and promulgated" by the sheriff. *Monell*, 436 U.S. at 690. A "custom"

> . . . for the purposes of *Monell* liability must be so permanent and well settled as to constitute a custom or usage with the force of law. In turn, the notion of "law" includes deeply embedded traditional ways of carrying out state policy. It must reflect a course of action deliberately chosen from among various alternatives. In short, a "custom" is a "legal institution" not memorialized by written law.

*Claiborne Cnty.*, 103 F.3d at 507 (citations and quotations omitted).

It is the court's task to identify the officials or governmental bodies which speak with final policymaking authority for the local government in a particular area or on a particular issue. *McMillian v. Monroe County*, 520 U.S. 781, 784-85 (1997). In matters pertaining to the conditions of the jail and to the operation of the deputies, the sheriff is the policymaker for the county. MICH.

COMP. LAWS § 51.75 (sheriff has the "charge and custody" of the jails in his county); MICH. COMP. LAWS § 51.281 (sheriff prescribes rules and regulations for conduct of prisoners); MICH. COMP. LAWS § 51.70 (sheriff may appoint deputies and revoke appointments at any time); *Kroes v. Smith*, 540 F. Supp. 1295, 1298 (E.D. Mich. 1982) (the sheriff of "a given county is the only official with direct control over the duties, responsibilities, and methods of operation of deputy sheriffs" and thus, the sheriff "establishes the policies and customs described in *Monell*"). Thus, the Court will look to the allegations in Plaintiff's complaint to determine whether Plaintiff has alleged that the sheriff of Allegan County has established a policy or custom which caused Plaintiff to be deprived of a constitutional right.

Plaintiff's action fails at this first step because his allegations have not identified a policy or custom that is the source of his injuries. Thus, he fails to state a claim against Allegan County. As a result, he fails to state a claim altogether.[1]

**Conclusion**

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's action will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the Court dismisses the action, the Court discerns no good-faith basis for an appeal. Should Plaintiff appeal this decision, the Court will assess the

---

[1] In his original complaint, Plaintiff also named the Allegan County Sheriff's Department as a defendant. Plaintiff fails to state a claim against the Allegan County Sheriff's Department for the same reasons stated in this Opinion with respect to ACJ and Allegan County.

$455.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $455.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A Judgment consistent with this Opinion will be entered.


Dated: April 8, 2013  /s/ Janet T. Neff
 Janet T. Neff
 United States District Judge